**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gregory Leferrall WARREN,**
**Defendant–Appellant.**

**No. 91–30464.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1992.

Decided Dec. 8, 1992.

Stephen R. Sady, Asst. Federal Public Defender, Portland, Or., for defendant-appellant.

Gary Y. Sussman, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before: TANG, BRUNETTI, and FERNANDEZ, Circuit Judges.

TANG, Circuit Judge:

Gregory Leferrall Warren appeals his sentence imposed under the United States Sentencing Guidelines after he pleaded guilty to one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). Warren contends the district court erred by imposing his 30–month federal sentence to run consecutively to an undischarged 30–year state prison sentence. Warren also seeks resentencing on the ground that the U.S. Attorney breached a plea agreement by recommending that

Warren's federal sentence run consecutively to his state sentence. We affirm.

## I.

In June 1991, Warren pleaded guilty to being a felon in possession of a firearm on or about October 2, 1990. At that time, the district court reviewed with Warren the terms of his plea agreement:

Now, [under] the agreement with the government, you're reserving the right and the court will listen carefully to the request that the sentence in this case run concurrently with the sentence that you received in the Circuit Court for Multnomah County on several conditions. The government's not going to take any position as to whether your federal sentence should run concurrently or consecutive[ly] to the state sentence.

The government reserves the right to fully inform the court and the probation officer of all the facts that it knows about. And you understand that while the court always listens carefully to the recommendations of the government, it's not bound by those recommendations.

Before sentencing, the parties exchanged and filed several letters and memoranda concerning a number of issues, including whether the federal sentence should run concurrently or consecutively to the state sentence. In response to the government's statements relating to the concurrent/consecutive issue, Warren accused the government of breaching its promise not to take a position on the issue.

The date for sentencing was continued several times. During this time, the November 1, 1991 version of the Sentencing Guidelines took effect. The government subsequently filed a memorandum bringing this development to the court's attention. Under the new Guidelines, the government asserted that the base offense level for Warren's federal conviction was raised to 24. Prior to November 1, the base offense level had been 12. *Compare* U.S.S.G. § 2K2.1(a)(2) (Nov. 1, 1991) *with id.* App.C. (amendment 374). The government asserted that the new base offense level should apply. Warren argued that applying the new base offense level would violate ex post facto.

Thereafter, the government agreed with Warren's argument and withdrew its request that the higher base offense level apply. In doing so, the U.S. Attorney explained that, because Warren had sought the benefit of some of the November 1, 1991 Guidelines amendments by moving to continue sentencing, the government assumed that the 1991 Guidelines would apply in their entirety. In withdrawing its request that Warren be sentenced under the 1991 version of Guidelines section 2K2.1, the government noted its position that the Guidelines in effect on the date of Warren's crime "should be applied as a whole." The government asserted that "Mr. Warren is not entitled to pick and choose favorable provisions" from the different versions of the Guidelines in effect at the time of the crime and at the time of sentencing.

Government assertions notwithstanding, Warren argued at sentencing that some of the 1991 Guidelines amendments still applied, despite the fact that his base offense level would be determined under the 1989 Guidelines. Specifically, Warren argued that a 1991 amendment to section 5G1.3, the Guidelines provision pertaining to the concurrent/consecutive issue, mandated that his federal sentence run concurrently with the state sentence. Under the version of section 5G1.3 in effect prior to November 1, 1991, however, the court retained discretion to decide whether Warren's federal sentence should run concurrently or consecutively with his separate, undischarged state term of incarceration. The court exercised this discretion, and determined that Warren's federal sentence should run consecutively to his state sentence.

Warren timely appeals his sentence.

## II.

■ We review de novo a district court's application of the Sentencing Guidelines. *United States v. Kohl,* 972 F.2d 294, 297 (9th Cir.1992).

#### A.

In challenging the imposition of a consecutive sentence, Warren assumes either that the November 1, 1991 version of Guidelines section 5G1.3 applies or that the previous version applies but is identical in effect to the later version. Under either version, Warren contends he is entitled to a concurrent sentence.

The latter assumption is clearly wrong. The 1989 version and the 1991 version of the guideline differ dramatically. The 1991 version was enacted to "provide[ ] additional structure and guidance for the decision to impose a consecutive or concurrent sentence upon a defendant subject to an undischarged term of imprisonment to reduce the potential for unwarranted disparity in such determinations." U.S.S.G. App.C (amendment 385). Thus, the revised version of section 5G1.3 applies to many more situations and allows for much less discretion than the 1989 version. This rigidity is evident from Warren's assertion, which the government does not dispute, that the 1991 version of section 5G1.3 would mandate that his federal sentence run concurrently with his state sentence.

■ On the other hand, the 1989 version of section 5G1.3 does not even directly pertain to Warren's situation. The guideline itself is only concerned with federal offenses committed when an individual is already serving a term of imprisonment stemming from other charges.[1] The 1989 commentary to this guideline indicates that the sentencing court has broad discretion whether to impose a concurrent or consecutive sentence when, as here, the federal offense was not committed while the defendant was serving another sentence. *See United States v. Adeniyi*, 912 F.2d 615, 618 (2d Cir.1990); *United States v. Miller*, 903 F.2d 341, 347–48 (5th Cir.1990). Although the 1989 commentary offers a methodology by which a court may determine whether to impose a concurrent or consecutive sentence in such situations, the commentary leaves to the court's discretion whether to apply the suggested methodology.

Given the broad discretion with which the district court is entrusted under the 1989 version of section 5G1.3, Warren's second assumption—stated above—must be rejected. The two versions of section 5G1.3 are substantially different. Under the 1989 version, the district court was well within bounds in choosing to impose a consecutive sentence based on the fact that the state and federal sentences pertained to separate incidents. Therefore, in order for Warren to show that he was entitled to a concurrent sentence, he must first show that the 1991 version of section 5G1.3 applies to his case. Based on the following discussion, we conclude that he cannot make this showing and that the district court therefore properly applied the 1989 version of Guidelines section 5G1.3.

1. The 1989 version of the guideline and its commentary reads as follows:
   § 5G1.3. Imposition of a Sentence on a Defendant Serving an Unexpired Term of Imprisonment
   If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status), the sentence for the instant offense shall be imposed to run consecutively to the unexpired term of imprisonment.
   Commentary
   Under this guideline, the court shall impose a consecutive sentence where the instant offense (or any part thereof) was committed while the defendant was serving an unexpired term of imprisonment.
   Where the defendant is serving an unexpired term of imprisonment, but did not commit the instant offense while serving that term of imprisonment, the sentence for the instant offense *may* be imposed to run consecutively or concurrently with the unexpired term of imprisonment. The court *may consider* imposing a sentence for the instant offense that results in a combined sentence that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time. Where the defendant is serving a term of imprisonment for a state offense, the information available may permit only a rough estimate of the total punishment that would have been imposed under the guidelines. It is not intended that the above methodology be applied in a manner that unduly complicates or prolongs the sentencing process.
   U.S.S.G. § 5G1.3 (Nov. 1, 1989) (emphasis added).

### B.

Normally, a district court is to apply the version of the Sentencing Guidelines in effect on the date of sentencing. *United States v. Mooneyham,* 938 F.2d 139, 140 (9th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 443, 116 L.Ed.2d 461 (1991). Section 3553(a), 18 U.S.C., provides that

The court, in determining the particular sentence to be imposed, shall consider—

....

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are *in effect on the date the defendant is sentenced* [.]

18 U.S.C. § 3553(a)(4) (emphasis added); *see also id.* § 3553(a)(5) (requiring court to consider Guidelines policy statements in effect at sentencing). In most cases, district courts must impose a sentence in accord with section 3553(a)(4), including that statute's requirement as to which version of the Guidelines should be applied. *Id.* § 3553(b).

We have recognized an exception to this rule in cases where amended versions of the Sentencing Guidelines are ex post facto. *See United States v. Castro,* 972 F.2d 1107, 1112 (9th Cir.1992) (remanding non-continuing offense convictions for resentencing under Guidelines in effect at the time of offenses *so as* not to violate Ex Post Facto Clause); *United States v. Sweeten,* 933 F.2d 765, 772 (9th Cir.1991) (to same effect); *see also Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (retrospective application of revised state -sentencing guidelines violates Ex Post Facto Clause); *United States v. Bol-*

*inger,* 940 F.2d 478, 483–85 (9th Cir.1991) (D.W. Nelson, J., dissenting) (opining that district court violated Ex Post Facto Clause in sentencing defendant under version of U.S.S.G. § 2K2.1(a) in effect on date of sentencing). In such cases, the defendant is to be sentenced under the relevant provisions of the Guidelines in effect at the time of the offense. *Sweeten,* 933 F.2d at 772.

There is no question in this case that by virtue of the Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3, Warren's base offense level was to be determined under the version of Guidelines section 2K2.1(a)(2) in effect on the date he committed his crime. Thus, contrary to Warren's suggestion, this is not a case about how to determine whether a sentence under the Guidelines implicates ex post facto.[2] Instead, the question raised by Warren is whether he can obtain the benefit of certain portions of the Guidelines in effect on the date of sentencing, given that he definitely would be sentenced under at least a portion of the Guidelines in existence at the time of his offense.

Specifically, Warren seeks application of the version of Guidelines section 5G1.3 in effect as of November 1, 1991, while still obtaining the benefit of a base offense level determined under the 1989 version of section 2K2.1(a). Opposing Warren, the government seeks application of the 1989 Guidelines in their entirety.

Three courts have already addressed this issue. In *United States v. Stephenson,* 921 F.2d 438 (2d Cir.1990), the district court sentenced the defendant under Guidelines in effect at the time of his crime to avoid ex post facto problems. While the defendant accepted the district court's application of some of the outdated Guidelines provisions, he sought application of other provisions that came into effect at the time

---

**2.** We see no reason in this case to consider whether it is enough that one provision under the Guidelines becomes more onerous, or whether the total effect of all relevant Guidelines provisions must be taken into account before a Guidelines sentence violates the Ex Post Facto Clause. *Cf. Miller,* 482 U.S. at 431–32, 107 S.Ct. at 2452 (finding onerous effect of one state sentencing guideline provision to be sufficient

to raise ex post facto issue when the state failed to "identify any feature of the revised guidelines law that could be considered ameliorative"); *Weaver v. Graham,* 450 U.S. 24, 34–36 & nn. 20 & 22, 101 S.Ct. 960, 967–968 & nn. 20 & 22, 67 L.Ed.2d 17 (1981) (focusing on one statutory provision when others might have counteracted ex post facto effect).

of sentencing. Without identifying the relevant portions of the Guidelines, the Second Circuit rejected defendant's argument and affirmed the application of the Guidelines as a whole as of the time the crime was committed. *Id.* at 441.[3]

In coming to this conclusion, the *Stephenson* court reasoned that piecemeal application of different versions of the Guidelines would frustrate the legislative objective of uniformity in sentencing. *Id.; see* 18 U.S.C. § 3553(a)(6); 28 U.S.C. §§ 991(b)(1)(B), 994(f). The court also quoted our decision in *United States v. Lawrence,* 916 F.2d 553 (9th Cir.1990). In *Lawrence,* we stated that, "[b]y allowing the guidelines to take effect, Congress has sanctioned the approach of the Commission, which, as expressed by the Commission's 'Application Instructions' of § 1B1.1, requires that the guidelines be read as a whole." *Id.* at 555.

The Eighth Circuit reached a similar result in *United States v. Lenfesty,* 923 F.2d 1293 (8th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991). In *Lenfesty,* the defendant again sought application of a favorable change in the Guidelines while continuing to receive the benefit of a provision under a previous version of the Guidelines. The court observed, however, that the relevant Guidelines provisions "relate to one another by their own terms." *Id.* at 1299. The court therefore rejected defendant's argument because "[t]he most reasonable interpretation of these provisions is that they move in concert." *Id.*

Finally, in *United States v. Boula,* 774 F.Supp. 506, 509 (N.D.Ill.1991), the court followed the broad approach of *Stephenson,* rejecting the same argument without indicating—as the court did in *Lenfesty*— that the two Guidelines provisions in question "relate to one another by their own terms."

Warren attempts to distinguish the Eighth Circuit's decision in *Lenfesty* on the basis that here the Guidelines provisions in question, sections 2K2.1 and 5G1.3, do not refer to one another. Warren argues that, unlike *Lenfesty,* there is no need to apply contemporaneous versions of the two provisions at issue here because they are not textually linked. Although *Lenfesty* may be distinguishable, the decision is also part of a broader approach reflected in *Stephenson* and *Boula.* Neither of these cases places any significance on whether the relevant Guidelines provisions reference one another. Instead, these decisions generally hold that a defendant's sentence should be controlled by no more than one version of the Guidelines.

The only contrary authority cited by Warren is a professional magazine article. *See* Toby D. Slawsky, *Ex Post Facto Problems: Changes in Sentencing Guidelines and Statutes and Policy Statements on Revocation of Supervision,* Fed. Probation, June 1991, at 69, 70–72. In her article, Slawsky suggests that the version of the Guidelines in effect on the date of sentencing should apply unless a particular provision runs afoul of the Ex Post Facto Clause, in which case the version of that particular provision in effect at the time of the offense should be applied. Slawsky asserts that this approach gives maximum effect to the statutes that mandate application of the version of the Guidelines in effect at sentencing. While she seems to recognize the resulting piecemeal approach, Slawsky contends that the problem is one for Congress to resolve.

Despite the arguments made by Slawsky and Warren, we are reluctant to depart from the approach established in *Stephenson.* Doing so would create an intercircuit conflict which we believe unnecessary. Such conflicts are to be avoided. *United States v. Gwaltney,* 790 F.2d 1378, 1388 n. 4 (9th Cir.1986), *cert. denied,* 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987). We recognize that this approach runs contrary to Congress's intent that defendants be sentenced under the version of the Guidelines in effect at the time of sentencing. However, our court has already determined that some departure from this intent

---

**3.** Although Warren tries to narrow the holding in *Stephenson* by referring to the briefs submitted in that case, his argument is neither persuasive nor procedurally proper.

is necessary to satisfy constitutional concerns. *See Castro,* 972 F.2d at 1112; *Sweeten,* 933 F.2d at 772. If, in deviating from one congressional mandate, we are to uphold the distinct, but equally important, intent of Congress that unwarranted sentencing disparities be avoided, we must follow the course laid out in *Stephenson.*

We acknowledge that piecemeal application of the Guidelines might promote uniformity in sentencing among defendants in Warren's situation. However, the Guidelines take a broader approach in measuring the consistency of sentences. As the Sentencing Commission has observed:

> A sentencing system tailored to fit every conceivable wrinkle of each case would quickly become unworkable and seriously compromise the certainty of punishment and its deterrent effect. . . .
>
> . . . .
>
> The larger the number of subcategories of offense and offender characteristics included in the guidelines, the greater the complexity and the less workable the system. Moreover, complex combinations of offense and offender characteristics would apply and interact in unforeseen ways to unforeseen situations, thus failing to cure the unfairness of a simple, broad category system. Finally, and perhaps most importantly, probation officers and courts, in applying a complex system having numerous subcategories, would be required to make a host of decisions regarding whether the underlying facts were sufficient to bring the case within a particular subcategory. The greater the number of decisions required and the greater their complexity, the greater the risk that different courts would apply the guidelines differently to situations that, in fact, are similar, thereby reintroducing the very disparity that the guidelines were designed to reduce.

U.S.S.G. ch. 1, pt. A.3, p.s. (Nov. 1, 1992).

In view of these observations, we think it more appropriate that sentences be determined under one set of Guidelines rather than applying the Guidelines piecemeal. Doing so will promote uniform sentences among all defendants guilty of Warren's crime, and not just among those defendants who committed their crimes and received their sentences when Warren did. We therefore reject Warren's argument and adopt the position advocated by the government. Our decision is consistent with the approach recently promulgated by the Sentencing Commission for sentences imposed on or after November 1, 1992. *See* U.S.S.G. § 1B1.11(b), p.s. & comment. (n. 1) (Nov. 1, 1992) (earlier editions of Guidelines Manual, when applicable, are to be used in their entirety); *see also id.* App.C (amendment 442) (new policy statement concerning applicability of earlier Guidelines effective November 1, 1992).

■ In sum, the district court did not err either in applying the 1989 version of Guidelines section 5G1.3 or in concluding that it had discretion under that guideline to impose a federal sentence to run consecutively to Warren's state sentence. The court did not abuse its discretion in imposing a consecutive sentence, for the district judge reasoned that the state and federal offenses were unrelated.

### III.

■ We have reviewed Warren's contention that the government breached the plea agreement by taking a position as to whether Warren's federal sentence should run concurrently or consecutively to the state sentence.

We conclude that the prosecutor's two sentencing memoranda and his statements at sentencing were fully consistent with both the government's promise to take no position and the right reserved by the government to inform the court of the facts of this case. *See United States v. Read,* 778 F.2d 1437, 1441–42 (9th Cir.1985), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986).

AFFIRMED.